IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 09-cv-02859-WDM-KLM

MARK S. CROSSEN and
OCEANNE CROSSEN,

    Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

    Defendant.

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Miller, J.

This case is before me on the Motion for Partial Summary Judgment on Duty to Defend (Docket No. 4) filed by Plaintiffs Mark S. Crossen and Oceanne Crossen, assignees of the rights and interests of Agreeable Enterprises, Inc., d/b/a Premier Specialty Services ("Premier" or the "Insured"). Defendant American Family Mutual Insurance Company ("American Family") opposes the motion. I have reviewed the parties' written arguments and the evidence submitted with their briefs. For the reasons that follow, the motion will be denied.

### Background[1]

This is coverage dispute on a contract of insurance. The underlying facts are relatively simple and the primary issues are a matter of contract interpretation and application. Premier was in the business of carpet and floor cleaning and was insured

---

[1] The following facts are taken from the parties' briefs and attached exhibits and are undisputed unless otherwise noted.

through a Commercial General Liability Policy issued by American Family, with a policy period of May 24, 2007 to May 24, 2008 (the "Policy"). Premier was engaged by the Crossens to clean floors and other areas of their residence; the work was to be done around August 21, 2007. On April 25, 2008, Mr. Crossen sent Premier a letter claiming that the cleaning process used by Premier had damaged the floors. Premier forwarded the letter to American Family with a request for coverage. On May 7, 2008, American Family denied coverage for the claim. On September 3, 2008, the Crossens sued Premier and its principal for the damage to the home (the "Underlying Suit"). Premier forwarded the complaint from the Underlying Suit to American Family; American Family again denied coverage under the Policy and refused to provide a defense. The Crossens thereafter filed an amended complaint in the Underlying Suit, which was not forwarded to American Family. On or around May 29, 2009, the Crossens and the Premier defendants settled the Underlying Suit. Pursuant to that settlement, Premier assigned to the Crossens all of its claims against American Family.

According to the original state court complaint in the Underlying Suit (Ex. A-2 to Complaint, Docket No. 1-2) Premier was to clean and reseal tile flooring in various rooms of the Crossen home. Premier's principal, D. Scott Thornton, was entirely responsible for choosing the method and materials to clean and seal the tile floors. According to the Crossens, Mr. Thornton used a specific cleaner, called Superior Traffic Lane Cleaner, and "sprayed it on approximately 200 square feet of tile flooring at a time, scrubbed it with a nylon bristle brush on a rotary floor machine, and extracted it . . . using fresh water (no additives) with an SX-12 floor tool attached to a Prochem PTO truck mount with around 200 degrees of heat and 800 PSI pressure . . . ." Underlying Suit Complaint at ¶ 13. Mr.

2

Thornton then used air movers to force dry the flooring. *Id.* Approximately 24 hours later, he applied a sealant. *Id.* The Crossens believe that the floors were damaged by the cleaning process as well as by being sealed before the recommended moisture emission rate was achieved. As a result, the Crossens' natural stone floor tile was discolored, the sealant appeared hazy and "tacky," and the grout began cracking. The Crossens allege that the floor may need to be removed and replaced in the event that sanding and resealing (or other cleaning methods) are unsuccessful.

In their amended complaint, the Crossens allege that the flooring would need to be removed and that the repair would cause damage to other portions of the home, including baseboards, trim, built-in furniture, plaster on the walls above the floors, and the loss of use of such items. Ex. A-3 to Complaint, Docket No. 1-3. American Family was not notified and did not consent to the settlement between the Crossens and American Family's insured, the Premier defendants.

The Crossens, as assignees of Premier, filed their complaint (Docket No. 1) in this Court on or around December 7, 2009 asserting the following claims: (1) breach of insurance contract; (2) bad faith and willful and wanton breach of insurance contract; and (3) declaratory relief, seeking a declaration regarding American Family's obligations to Premier under the Policy.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Discussion

1. Applicable Law

Jurisdiction in this matter is based on diversity. 28 U.S.C. § 1332. Therefore, as the parties agree, I apply the law of Colorado in resolving the issues. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006).

"An insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation." *Chacon v. American Family Mut. Ins. Co.,* 788 P. 2d 748, 750 (Colo. 1990). Words in the policy should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended. *Id*. If a contractual provision is ambiguous, that is, if it is reasonably susceptible to different meanings, it must be construed against the drafter and in favor of providing coverage to the insured. *Id*.

An insurer seeking to avoid a duty to defend has a "heavy burden." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999). If the insurer claims that coverage does not exist because of an exclusion, the insurer "must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretation." *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1090 (Colo. 1991). "An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Id*. The duty to defend is determined by looking at the allegations of the underlying complaint[2] against the insured and extrinsic evidence is not to be considered.

---

[2]American Family argues that since it never received notice of the amended complaint, its refusal to provide coverage or a defense cannot be evaluated based on

4

*Compass*, 984 P.2d at 615. Nonetheless, ambiguity should be determined based on the facts and circumstances presented in a particular case. *TerraMatrix, Inc. v. United States Fire Ins. Co.,* 939 P.2d 483, 487 (Colo. App. 1997). My interpretation of an insurance contract is a matter of law. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).

  2. <u>The Policy</u>

The Policy has a general declarations page, which sets forth the limits of insurance. It includes a $1 million "General Aggregate Limit (Other Than Products-Completed Operations)" and another $1 million "Products-Completed Operations Aggregate Limit" as well as other specific coverage limits. Policy, Ex. A-1 to Complaint (Docket No. 1-1). Section I of the Policy contains coverages and exclusions. Section III of the Policy explains the limits of insurance as follows: "The General Aggregate Limit is the most we will pay for the sum of: [medical expenses], Damages under Coverage A, except damages because of 'bodily injury' or 'property damage' included in the 'products-completed operations hazard,' and [other damage coverage]." *Id.* Sec. III, ¶ 2. The Products Completed Operations Aggregate Limit is "the most we will pay under Coverage A for damages because of 'bodily injury' and 'property damage' included in the 'products-completed operations hazard.'" *Id.* Sec. III, ¶ 3.

"Coverage A" is for Bodily Injury and Property Damage Liability. The insuring

---

the allegations in that pleading. Plaintiffs do not really contest this assertion but contend that the allegations in the original complaint are adequate to trigger coverage. Accordingly, I will only examine the allegations in the original complaint in determining whether the damage and cause alleged are sufficient to place it within the Policy's coverage.

agreement states "We will pay those sums that the insured becomes legally obligated to pay because of 'bodily injury' or 'property damage' to which this insurance applies." *Id*. Sec. I, Coverage A, ¶ 1 (a). It further provides that coverage is available only if the injury or damage is caused by an "occurrence." *Id*. Sec. I, Coverage A, ¶ 1 (b)(1). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. Sec. V, ¶ 13.

The Policy also includes several exclusions for Coverage A. The exclusions relevant here are as follows:

> (b) Contractual Liability
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages: (1) That the insured would have in the absence of the contract or agreement . . .
>
> * * *
>
> (j) Damage to property
> "Property damage" to: . . . (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. . . . Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard."
>
> * * *
>
> (l) Damage To Your Work
> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

*Id*. Sec. I, Coverage A, ¶ 2.

"Your work" is defined as "(1) Work or operations performed by you or on your

6

behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." *Id*. Sec. V, ¶ 22 (a). The definition also includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work' . . ." *Id*. Sec. V, ¶ 22(b).

Finally, the "products-completed operations hazard" is defined in relevant part as follows:

> Includes all "bodily injury" and "property damage" occurring away from premises you own or rent arising out of . . . "your work" except . . . Work that has not yet been completed or abandoned [with additional explanation of what may constitute completion or abandonment]. Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete will be treated as completed.

*Id*. Sec. V, ¶ 16(a).

American Family argues on numerous grounds that the alleged damage caused by Premier is not covered under the Policy. First, American Family contends that the complaint did not demonstrate an "occurrence" as defined by the Policy. Next, American Family argues that coverage is excluded by Exclusion (b), Exclusion (j) or Exclusion (l), as well as other exclusions. I will address each of American Family's arguments in the order presented in its Response Brief (Docket No. 20).

    3.    <u>Occurrence</u>

American Family argues that the original complaint alleges no damage other than to the floor itself and, therefore, it is not an "occurrence" under the Policy.[3] Particularly

---

[3] I note that American Family, in its letter refusing to provide a defense for the Underlying Suit, stated that the complaint in that action "alleges property damage caused by an occurrence." Sept. 26, 2008 Letter, Ex. 6 to Plaintiffs' Motion for Partial S.J. (Docket No. 4-10) at 5. In that letter, American Family relied primarily on policy

7

pertinent here is a recent Colorado state court case discussing exactly this issue, *General Security Indemnity Co. of Arizona v. Mountain States Mutual Casualty Co.*, 205 P.3d 529 (Colo. App. 2009).

The *General Security* case involved alleged defects in the construction of homes at a residential subdivision. At issue were commercial general liability ("CGL") policies containing a definition of "occurrence" identical to the one at issue here. The division of the Colorado Court of Appeals noted that the term "accident" has previously been defined as "an unanticipated or unusual result flowing from a commonplace cause." *General Security*, 205 P.3d at 534. The division adopted the position of a majority of jurisdictions in holding that "a claim for damages arising from poor workmanship, standing alone, does not allege an accident that constitutes a covered occurrence, regardless of the underlying legal theory pled." *Id.* at 534. However, the division noted that this principle has a "corollary," which is that "an 'accident' and 'occurrence' are present when consequential property damage has been inflicted upon a third party as a result of the insured's activity." *Id.* at 535. Because all of the damage alleged was to the homes themselves, the division determined that there was no "occurrence" triggering coverage. *Id.* at 537-38.

In another case in this Court, my colleague Judge Marcia Krieger applied the *General Security* case to further refine the "corollary" principle. *Greystone Constr., Inc., v. Nat'l Fire & Marine Ins. Co.,* 649 F. Supp. 2d 1213 (D. Colo. 2009). Specifically, she determined that "'damage inflicted on a third party' necessary to invoke the corollary refers to faulty workmanship causing property damage to something *other than* the work product

---

exclusions as grounds for refusing coverage.

itself." 649 F. Supp. 2d at 1218 (emphasis in the original). Therefore, if the insured's poor workmanship resulted in damage to something other than the work product, such damage could constitute an "occurrence" under a similar CGL policy.

American Family contends that the damaged floor is the "work product" of Premier and therefore damage to it caused by Premier's alleged poor workmanship does not amount to an occurrence under the policy. In response, Plaintiffs contend that the tile floor that was damaged was not Premier's "work." They note that Premier was hired to clean the floor, not to install or supply it.

I agree with Plaintiffs. The damage to Plaintiffs is not simply a failure of Premier to adequately clean or seal the floor, which would be the applicable "work product." Plaintiffs argue, and I agree, that if Plaintiffs had alleged only that the floors needed to be recleaned and resealed, this would constitute "poor workmanship, standing alone" and would not be a covered occurrence under *General Security* and *Greystone Construction*. Here, however, it is alleged that there is some damage to the floors themselves beyond simply the failure to adequately clean and seal them, which is arguably consequential property damage inflicted as a result of the insured's activity in cleaning the floor. Accordingly, I conclude that the original complaint may have adequately alleged an occurrence under the Policy.

After briefing in this matter was complete, Plaintiffs filed a Notice of Supplemental Authority (Docket No. 24). Plaintiffs supplemental authority is a new state statute, House Bill 10-1394, signed into law on May 21, 2010. The bill addresses some of the issues raised in *General Security* and provides, *inter alia*, that when considering commercial liability policies issued to construction professionals "a court shall presume that the work

of a construction professional that results in property damage, including damage to the work itself or other work, is an accident unless the property damage is intended and expected by the insured." House Bill 10-1394 at p.3 (enacting C.R.S. § 13-20-808(3)). Because I have concluded that the Policy could cover the injury alleged here, notwithstanding *General Security*, I need not address the effect of the new legislation.

2. Exclusion (j)(5) and (6) and Exclusion (l)

American Family also argues that it is not obligated to defend or indemnify because of Exclusion (j)(5), which bars coverage for damage to "That particular part of real property on which you . . . are performing operations, if the 'property damage' arises out of those operations." Alternatively, American Family contends that Exclusion (j)(6), which bars coverage for "That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it," precludes coverage for the damage to the Crossens' floors.

The parties appear to agree that Exclusions (j)(5) and (6) apply to operations in progress. Exclusion (j)(6) expressly does not apply to damage included in the "products-completed operation hazard," which concerns damage occurring away from the insured's premises and which must be "completed." American Family argues that "the damage occurred while the insured was performing its work on the tile floors, i.e., as a result of the high pressure washing and sealing the floors before they were dry." Response Brief (Docket No. 20) at 15. Therefore, according to American Family's argument, these provisions bar coverage for the damage.

Exclusions like (j)(6) are described as "faulty workmanship" provisions. *McGowan v. State Farm Fire & Cas. Co.,* 100 P.3d 521, 525 (Colo. App. 2004). In general, CGL

10

policies exclude coverage for faulty workmanship on the grounds that it is considered a business risk to be borne by the insured. *Id.* A CGL policy is "not intended to serve as a performance bond or a guaranty of goods or services." *Hartford Acc. & Indem. Co. v. Pacific Mut. Life Ins. Co.*, 861 F.2d 250, 253 (10th Cir. 1988). Under the plain language of the exclusion, the damage to the floors would be excluded by (j)(6). However, Plaintiffs argue that the damage occurred after Premier's work was completed and that coverage is therefore saved by the products-completed operations hazard provision and by the language of Exclusion (j)(5), which limits the exclusion to property on which the insured "is performing" operations.

"The time of the discovery of the property damage does not determine when it took place." *American Employer's Ins. Co. v. Pinkard Constr. Co.*, 806 P.2d 954, 956 (Colo. App. 1990). I agree with American Family that damage alleged here is barred by Exclusion (j)(6). Interpreting a similar CGL policy with an identical faulty workmanship provision, the Tenth Circuit concluded that the exclusion was intended to exclude property damage "that directly or consequentially occurs from faulty workmanship of the insured and its contractors/subcontractors (i.e., work that 'was incorrectly performed') while the work is ongoing." *Advantage Homebuilding, LLC v. Maryland Cas. Co.*, 470 F.3d 1003, 1012 (10th Cir. 2006). Plaintiffs' complaint alleges that dirty water was forced into the porous stone and that the floors were not sufficiently dry when sealed - this is clearly work that was *incorrectly performed at the time the work was ongoing*. No additional event occurred after the work was completed to cause the damage, even if the effects continued to worsen as time went by. Given the limited purpose of a CGL policy, the plain language of this policy, and the case law cited above, I agree that the faulty workmanship provision bars coverage

here. House Bill 10-1394 does not alter my conclusion in this regard, as it expressly does not create or require coverage for damage not otherwise provided in the policy. House Bill 10-1394 at p. 3 (enacting C.R.S. § 13-20-808(3)(a) and (b)).

In the alternative, I agree that Exclusion (l) would also bar coverage. This provides an exclusion for "'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" Plaintiffs argue that this exclusion conflicts with the exception to Exclusion j(6), the products-completed operations hazard, and therefore creates an ambiguity that must be resolved in favor of the insured.

This requires an examination of the interaction between the various exclusions and the products-completed operation hazard. "Commercial general liability policies commonly differentiate between the insured's ongoing operations and those that have been completed or abandoned, especially in relation to the application of the business risk exclusion." 9A Couch on Insurance § 129:13 (3d ed. Dec. 2009). Other courts construing similar products-completed hazard provisions have concluded that this language provides no additional coverage but rather is a subpart of the policy, and "describes coverage within the policy for the same type of injuries or damages covered by the rest of the policy, save for a different period of time." *Am. Home Assurance Co. v. AGM Marine Contractors, Inc.*, 379 F. Supp. 2d 134, 137 (D. Mass. 2005); *see also DCB Constr. Co., Inc., v. Travelers Indem. Co. of Illinois*, 225 F. Supp. 2d 1230, 1234 (D. Colo. 2002) (the aggregate completed operations hazard limitation in a similar CGL policy means "nothing more than this sum is the greatest amount for which the policy could respond for claims falling within the exception to [the faulty workmanship exclusion].") (quoting defendant's brief). This is consistent with the language of the policy limitations here, which describes separate limits

of coverage for the liability under the products-completed operations hazard and otherwise.

Read together, I agree with those courts that have considered the effect of these provisions together and found no ambiguity. *See e.g., AGM Marine Contractors, supra,* 379 F. Supp. 2d at 137 (the products-completed operations hazard, "when read with the two exclusions does not provide coverage for faulty workmanship; instead, it unambiguously provides coverage for damages to persons or <u>other</u> property occurring after completion of the insured's work and away from the insured's premises.") (emphasis added). The products-operations completed hazard refers to property damage arising out of the insured's work after work is completed, which I understand to mean damage to property other than the insured's work. Exclusion (l) then excludes coverage for damage <u>to</u> the insured's work, which includes work or operations performed by the insured or warranties or representations about the quality of the work. Because these two provisions are not in conflict, I conclude there is no ambiguity.

Because I conclude that the exclusions discussed above preclude coverage, I do not address Defendant's remaining arguments.

Accordingly, it is ordered:

1. Plaintiffs' Motion for Partial Summary Judgment on Duty to Defend (Docket No. 4) is denied.
2. Because I conclude as a matter of law that Defendant did not have a duty to defend, and this issue is dispositive of Plaintiffs' claims, judgment shall enter in favor of Defendant American Family Insurance and against Plaintiffs on all claims.

3. Defendant may have its costs.

DATED at Denver, Colorado, on July 7, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge